# United States Court of Appeals for the Federal Circuit

04-1515

HEARTLAND BY-PRODUCTS, INC.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Stanley McDermott III, DLA Piper Rudnick Gray Cary US LLP, of New York, New York, argued for plaintiff-appellant. With him on the brief were Daniel J. Gluck and Jerome L. Hanifin, Serko & Simon, of New York, New York.

Aimee Lee, Attorney, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice, of New York, New York, argued for defendant-appellee. With her on the brief were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, of Washington, DC, and Barbara S. Williams, Attorney in Charge, International Trade Field Office, of New York, New York. Of counsel on the brief were Karen P. Binder, Assistant Chief Counsel, International Trade Litigation, United States Customs and Border Protection, of New York, New York, Yelena Slepak, Attorney, and Allan Martin, Associate Chief Counsel, of Washington, DC; and Ellen Daly, Attorney, Office of Chief Counsel, of Washington, DC.

Appealed from: United States Court of International Trade

Judge Judith M. Barzilay

# United States Court of Appeals for the Federal Circuit

04-1515

HEARTLAND BY-PRODUCTS, INC.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

_____

DECIDED:  September 26, 2005
_____

Before MICHEL, <u>Chief Judge</u>, SCHALL and PROST, <u>Circuit Judges</u>.

MICHEL, <u>Chief Judge</u>.

Heartland By-Products, Inc. ("Heartland") appeals the order of the United States Court of International Trade dismissing its May 2003 complaint for lack of subject matter jurisdiction.  <u>Heartland By-Prods., Inc. v. United States</u>, 341 F. Supp. 2d 1284 (Ct. Int'l Trade 2004).  This appeal was submitted for decision following oral argument on August 2, 2005.  Because we hold that the Court of International Trade has ancillary jurisdiction to determine the scope and effect of its prior decision in <u>Heartland By-Products, Inc. v. United States</u>, 74 F. Supp. 2d 1324 (Ct. Int'l Trade 1999), we reverse the order of dismissal and remand for further proceedings on the merits.

BACKGROUND

This case comes to us by a long and tortuous path. The dispute between Heartland and the United States Customs Service ("Customs")[1] originated in 1995. At that time, Heartland, a sugar refiner, requested an advance ruling from Customs regarding the classification of its prospective sugar syrup imports from Canada. On May 15, 1995, Customs issued New York Ruling Letter 810328 ("New York Ruling Letter"), classifying Heartland's prospective imports under subheading 1702.90.40 of the Harmonized Tariff Schedule of the United States ("HTSUS"). Under this classification, Heartland's sugar syrup was not subject to the significantly higher duty rates imposed under the Tariff Rate Quota ("TRQ").[2] Having obtained the advance classification ruling from Customs, Heartland began its import and refining operations in the United States in mid-1997.

About four years later, in response to a petition under 19 U.S.C. § 1516 by a number of domestic trade associations, Customs published a notice of its intent to revoke the New York Ruling Letter and to reclassify Heartland's sugar syrup imports under a different HTSUS provision, subject to the TRQ. Proposed Revocation of Ruling Letter & Treatment Relating to Tariff Classification of Certain Sugar Syrups, 33 Cust. Bull. No. 22/23, at 56-57 (June 9, 1999). On September 8, 1999, following a comment period, Customs issued a final notice revoking the New York Ruling Letter and

---

[1] Effective March 1, 2003, the United States Customs Service was renamed the United States Bureau of Customs and Border Protection. Homeland Security Act of 2002, Pub. L. No. 07-296, § 1502, 116 Stat. 2135, 2308-2309 (2002).

[2] According to Heartland, the non-TRQ duty during the relevant period was 0.35 cents per liter compared to the TRQ rate of 35.74 cents per kilogram, approximately 10,000 percent higher than the non-TRQ rate.

reclassifying Heartland's sugar syrup imports, effective November 8, 1999. <u>Revocation of Ruling Letter & Treatment Relating to Tariff Classification of Certain Sugar Syrups</u>, 33 Cust. Bull. No. 35/36, at 41 (Sept. 8, 1999) ("Revocation Ruling").

On September 20, 1999, Heartland filed a complaint in the Court of International Trade seeking pre-importation review of the Revocation Ruling under 28 U.S.C. § 1581(h) and an injunction preventing Customs from enforcing the Revocation Ruling under 28 U.S.C. § 1581(i). On October 18, 1999, the Court of International Trade exercised its jurisdiction under § 1581(h)[3] to grant Heartland's motion for judgment on the agency record. <u>Heartland By-Prods., Inc. v. United States</u>, 74 F. Supp. 2d 1324 (Ct. Int'l Trade 1999) ("<u>Heartland I</u>"). The court declared Customs' Revocation Ruling unlawful and ordered that Heartland's sugar syrup be classified under subheading 1702.90.40 HTSUS, the classification established by the New York Ruling Letter. <u>Id.</u> at 1345. Relying on <u>Heartland I</u>, Heartland continued to import sugar syrup into the United States.

The government, joined by the United States Beet Sugar Association, which had intervened as a defendant below, appealed the Court of International Trade's decision

---

[3]     28 U.S.C. § 1581(h) provides:

The Court of International Trade shall have exclusive jurisdiction of any civil action commenced to review, prior to the importation of the goods involved, a ruling issued by the Secretary of the Treasury, or a refusal to issue or change such a ruling, relating to classification, valuation, rate of duty, marking, restricted merchandise, entry requirements, drawbacks, vessel repairs, or similar matters, but only if the party commencing the civil action demonstrates to the court that he would be irreparably harmed unless given an opportunity to obtain judicial review prior to such importation.

in Heartland I.[4]  We reversed, reasoning that Customs' persuasive interpretation of the relevant HTSUS provisions merited deference under Skidmore v. Swift & Co., 323 U.S. 134 (1944).  Heartland By-Prods., Inc. v. United States, 262 F.3d 1126 (Fed. Cir. 2001) ("Heartland II").  This court's decision did not specify the date as of which the TRQ rates would apply to Heartland's sugar syrup entries.  Our decision issued on August 30, 2001, nearly two years after the decision was reviewed.  The following day, Heartland ceased importing sugar syrup into the United States.

After denying Heartland's petition for rehearing, this court issued its mandate on December 4, 2001.  Customs, however, did not wait for the mandate to issue before commencing full-scale liquidation and reliquidation of Heartland's sugar syrup entries at the TRQ rates.  Beginning on October 5, 2001, Customs liquidated some 1,225 entries prior to the issuance of the mandate.  Customs continued to liquidate and reliquidate Heartland's entries after the mandate issued.

Heartland responded by filing a motion for entry of judgment on December 13, 2001, asking that the Court of International Trade determine the effective date of its ruling in Heartland I and thus the propriety of Customs' actions.  Heartland alleged that § 1581(h) conferred jurisdiction on the trial court to consider the scope of its ruling in Heartland I and argued that, under 19 U.S.C. § 1625(c),[5] the higher TRQ duties became applicable no earlier than 60 days after the issuance of the appellate mandate.

---

[4]    The government did not seek to stay Heartland I pending appeal.

[5]    19 U.S.C. § 1625(c) provides, in relevant part:

(c) Modification and revocation. A proposed interpretive ruling or decision which would--

In December 2001, Heartland began to file protective protests under 19 U.S.C. § 1514, administratively challenging Customs' allegedly premature liquidations and reliquidations of its sugar syrup entries at the TRQ rate.

The Court of International Trade heard oral argument on Heartland's motion for entry of judgment on January 23, 2002.  At oral argument, counsel for the government represented that Heartland may establish jurisdiction under 28 U.S.C. § 1581(a)[6] by protesting the liquidation or reliquidation of a single entry and that Customs "would likely" suspend action on Heartland's other entries pending court proceedings.  In view of this representation, the trial court advised the parties to work together to settle the jurisdictional issue.  Heartland promptly contacted the government, suggesting that it deny a protest of a single entry, which Heartland would contest under § 1581(a), while Customs deferred taking any action on all other pending entries.  Customs, however, proposed denying three representative entries, the first reliquidated prior to the issuance of the mandate, the second reliquidated after the issuance of the mandate, and the third liquidated after the issuance of the mandate.  On February 15, 2002, two days after

---

       (1) modify (other than to correct a clerical error) or revoke a prior interpretive ruling or decision which has been in effect for at least 60 days; or
       (2) have the effect of modifying the treatment previously accorded by the Customs Service to substantially identical transactions;

shall be published in the Customs Bulletin. . . .  The final ruling or decision shall become effective 60 days after the date of its publication.

[6]     28 U.S.C. § 1581(a) provides:

The Court of International Trade shall have exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part, under section 515 of the Tariff Act of 1930.

Heartland questioned the necessity of denying three rather than just one entry, Customs resumed liquidating and reliquidating Heartland's entries at the TRQ rate.

On February 26, 2002, the Court of International Trade denied Heartland's motion for entry of judgment. Heartland By-Prods., Inc. v. United States, 223 F. Supp. 2d 1317 (Ct. Int'l Trade 2002) ("Heartland III"). The court vehemently rejected the government's argument that § 1581(h) covers only prospective rather than actual entries, "even when the actual entry was the prospective entry contemplated by the court when it took jurisdiction of the case, and by the ruling that was the subject of [Heartland's] complaint." Id. at 1330. The Court of International Trade explained that "[w]hile the jurisdictional predicate for § 1581(h) requires that the entries be prospective, this must be distinguished from the effect of a judicial decision which can only be useful if it is applied to real entries." Id. The court thus ruled that it continued to have jurisdiction to adjudicate issues pertaining to the actual entries covered by Heartland I: "To force an importer to seek relief under § 1581(h) to establish its rights, and then force it to litigate again when it seeks to enforce those rights with actual entries, would make § 1581(h) superfluous as an avenue of relief." Id. at 1331. The trial court also observed that because its decision in Heartland I remained binding and enforceable until the issuance of the appellate mandate, "[a]ny action by Customs that applies the [Revocation Ruling] prior to the issuance of the mandate directly flouts the authority of this court over rulings under § 1581(h)." Id.

Nonetheless, the Court of International Trade declined to exercise its jurisdiction under § 1581(h) to determine the temporal effect of its ruling in Heartland I, stating that a "better alternative" was available to Heartland in this case, namely, jurisdiction under

28 U.S.C. § 1581(a). <u>Id.</u> at 1335. The court reasoned that while it had "the option of ruling on the applicability of § 1625(c) to some of the entries covered by [Heartland's] motion" — specifically, those entered and liquidated prior to December 11, 2001 — it would be unable to consider all of the relief requested by Heartland, given the unclear factual record and the uncertain status of other entries in the liquidation process. <u>Id.</u> at 1334. The protest process, the court explained, would allow the development of a clear factual record. Hence, the court concluded that "[i]n this case, to maintain jurisdiction under § 1581(h), or extend it under § 1581(i), when another more comprehensive avenue is available is unwise." <u>Id.</u> at 1335. The Court of International Trade thus entered judgment in accordance with the appellate mandate and dismissed the complaint.

Heartland did not appeal <u>Heartland III</u>. Several months later, Heartland renewed its proposal that Customs deny the protest of a single entry to establish jurisdiction under § 1581(a). Heartland had filed two such protests, dated March 1 and March 8, 2002, each covering only a single entry. Despite Heartland's renewed proposal, on December 3, 2002, Customs denied four pending protests, totaling approximately $10 million in TRQ duties. Customs denied one additional protest worth $26 million in TRQ duties on February 27, 2003. None of these protests included the single-entry protests filed by Heartland.

On May 29, 2003, Heartland filed a second complaint in the Court of International Trade, challenging Customs' retroactive imposition of TRQ duties on Heartland's sugar syrup entries imported in reliance on <u>Heartland I</u>. Both counts of the complaint, the first styled under § 1581(h) and the second under § 1625(c), sought declaratory judgment as

well as a preliminary and permanent injunction. On July 28, 2003, the government moved to dismiss Heartland's complaint for lack of subject matter jurisdiction or, in the alternative, for failure to state a claim upon which relief can be granted. On July 1, 2004, almost one year later, having heard no oral argument, the Court of International Trade dismissed Heartland's complaint. Heartland By-Prods., Inc. v. United States, 341 F. Supp. 2d 1284 (Ct. Int'l Trade 2004) ("Heartland IV").

The Court of International Trade determined that it lacked jurisdiction under both § 1581(h) and § 1581(i).[7] With respect to § 1581(h), the court concluded that it could no longer exercise jurisdiction because it "formally relinquished jurisdiction" under that provision when it denied Heartland's motion for entry of judgment and dismissed the original case in Heartland III. The present action, the trial court reasoned, "[w]hile

---

[7] 28 U.S.C. § 1581(i) provides:

(i) In addition to the jurisdiction conferred upon the Court of International Trade by subsections (a)-(h) of this section and subject to the exception set forth in subsection (j) of this section, the Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for--

(1) revenue from imports or tonnage;

(2) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue;

(3) embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety; or

4) administration and enforcement with respect to the matters referred to in paragraphs (1)-(3) of this subsection and subsections (a)-(h) of this section.

. . . .

involving the same parties, entries and underlying dispute as <u>Heartland III</u> . . . is an entirely separate, new cause of action. Therefore, Heartland carries the burden of re-establishing the jurisdiction of this court to survive the government's motion to dismiss." <u>Id.</u> at 1287. The trial court next determined that no new basis for § 1581(h) jurisdiction existed. The Court of International Trade found that Heartland could not satisfy the requirements of § 1581(h) anew, as all of its entries had already been imported, and no prospective entries were in dispute.

Turning to § 1581(i), the trial court observed that this "catch-all" jurisdictional provision "may not be invoked when jurisdiction under another subsection of section 1581 is, or could have been available, unless the remedy provided under that other subsection would be manifestly inadequate." <u>Id.</u> at 1289. Here, the court explained, Heartland's alleged inability to pay "ruinous" duties on the protested entries did not alone render a remedy under § 1581(a) manifestly inadequate. <u>Id.</u> (citing, <u>inter alia</u>, <u>Am. Air Parcel Forwarding Co. v. United States</u>, 718 F.2d 1546, 1551 (Fed. Cir. 1983)). The court thus found jurisdiction under § 1581(i) unavailable. Finding no subject matter jurisdiction to adjudicate Heartland's complaint, the Court of International Trade dismissed the action.

Heartland timely appealed to this court. We have jurisdiction under 28 U.S.C. § 1295(a)(5).

DISCUSSION

Heartland makes three main arguments on appeal. First, it contends that the Court of International Trade erred by not treating Heartland's complaint as "an independent action" for relief from the judgment of dismissal in <u>Heartland III</u> under Court

of International Trade Rule 60(b).[8]  Such an action, Heartland argues, does not require an independent basis for jurisdiction.  Second, Heartland asserts that the Court of International Trade had continued to possess jurisdiction under § 1581(h) to determine the scope of its ruling in Heartland I.  This inherent authority, Heartland maintains, did not terminate upon the court's dismissal of the original action in Heartland III.  Third, Heartland claims the trial court had jurisdiction under the catch-all provision in § 1581(i).  To that end, Heartland challenges the trial court's determination that jurisdiction under § 1581(a) was not "manifestly inadequate," rendering § 1581(i) jurisdiction unavailable as a matter of law.

The government responds that Heartland's complaint fails to seek relief from the judgment in Heartland III under Rule 60(b), as the complaint mentions neither Rule 60(b) nor Heartland III.  In reply to Heartland's argument that the Court of International Trade continued to have jurisdiction under § 1581(h), the government asserts that the court forever relinquished jurisdiction over the original action when it dismissed Heartland III, and that the present action constitutes an entirely new, separate case, requiring an independent jurisdictional basis.  Finally, the government defends the trial court's finding that the alleged adequacy of § 1581(a) rendered jurisdiction under § 1581(i) unavailable, arguing that financial hardship alone does not make jurisdiction under § 1581(a) "manifestly inadequate."

---

[8]  Rule 60(b) provides, in relevant part:

> This rule does not limit the power of the court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to grant relief to a defendant not actually personally notified as provided in Title 28 U.S.C. § 1655, or to set aside a judgment for fraud upon the court.  The procedure for obtaining relief from a judgment shall be by motion as prescribed in these rules or by an independent action.  (Emphasis added).

We review decisions of the Court of International Trade dismissing for lack of subject matter jurisdiction de novo. Xerox Corp. v. United States, 289 F.3d 792, 794 (Fed. Cir. 2002). We begin with Heartland's argument that the Court of International Trade continued to have jurisdiction under § 1581(h) to determine the scope and effect of its decision in Heartland I, an argument that we accept.

The Court of International Trade concluded that because it "formally relinquished jurisdiction" over the original action in Heartland III, jurisdiction under § 1581(h) was no longer available. Indeed, in Heartland III, the trial court "declined" to exercise jurisdiction under § 1581(h) despite correctly finding such jurisdiction did lie. Mindful of the fact that Heartland IV, not Heartland III, is before us on review, we nonetheless note that the Court of International Trade did not have the authority to simply decline to exercise jurisdiction conferred by § 1581(h). Such an exercise is not optional. See New Orleans Pub. Serv., Inc. v. Council of New Orleans, 491 U.S. 350, 358 (1989) ("federal courts lack the authority to abstain from the exercise of jurisdiction that has been conferred"). Having assured itself of § 1581(h) jurisdiction over at least some of the entries, the trial court should have deferred ruling on the government's motion to dismiss pending clarification of the factual record as to other entries or dismissed the action without prejudice pending such clarification, rather than entering judgment that finally dismissed the action.

In Heartland IV, despite acknowledging that Heartland's second action involved the same parties, the same entries, and the same underlying dispute as Heartland III, the court nevertheless seemed to treat as legally dispositive the fact that it had "finally relinquished" jurisdiction over the original case in Heartland III. The central issue in this

appeal is thus whether the Court of International Trade had jurisdiction to review the scope of its prior decision in Heartland I, despite its dismissal in Heartland III of the original action of which the prior decision was part.  We have had occasion to examine the underlying question in United States v. Hanover Insurance Co., 82 F.3d 1052 (Fed. Cir. 1996).  There, the United States commenced an action against Hanover, a surety, in 1992 to recover unpaid antidumping duties and interest from 1978.  The Court of International Trade granted Hanover's motion to dismiss the action as barred by the six year statute of limitations set forth in 28 U.S.C. § 2415(a).  Despite the dismissal, Customs continued to demand payment and threatened Hanover with administrative sanctions, including directing all district and regional directors not to accept any merchandise covered by bonds underwritten by Hanover and requesting that the Treasury Department remove Hanover from the list of approved sureties pursuant to 19 U.S.C. § 1623.  Hanover sought redress from the Court of International Trade by filing a motion for civil contempt, arguing that the threatened administrative actions contravened the court's order dismissing the case as time-barred.

Concluding that it had "jurisdiction to determine the effect of, and to enforce its own judgments," and therefore power to determine the legal effect of its prior dismissal, the court enjoined Customs from further administrative attempts to collect the unpaid duties and interest.  This court affirmed, explaining:

> Like district courts, see 28 U.S.C. § 1585 (1994), the Court of International Trade has the inherent power to determine the effect of its judgments and issue injunctions to protect against attempts to attack or evade those judgments.  The issue before the court on Hanover's motion for civil contempt was whether Customs' attempt to circumvent the limitation period by resort to administrative actions was contrary to the prior order of dismissal.  Such an inquiry falls squarely within the court's inherent power to determine the effect of its prior judgments.  Where a party's conduct is

in violation, or evasive, of a prior judgment, the Court of International Trade also has authority to enjoin that conduct regardless of whether the conduct amounts to civil contempt.

Id. at 1054.  This inherent power, which flows from a federal court's original authority to render a judgment in the case, has been termed "ancillary jurisdiction."[9]  As the Supreme Court has explained:

> We have reserved the use of ancillary jurisdiction in subsequent proceedings for the exercise of a federal court's inherent power to enforce its judgments.  Without jurisdiction to enforce a judgment entered by a federal court, the judicial power would be incomplete and entirely inadequate to the purposes for which it was conferred by the Constitution.

Peacock, 516 U.S. at 356 (citation and quotation omitted);[10] see also Peter Bay Homeowners Assoc., Inc. v. Stillman, 294 F.3d 524, 533 (3d Cir. 2002) ("There is no question . . . that the District Court had jurisdiction to interpret the scope of the easement ordered by Judge Young in his 1975 decision.  It had the jurisdiction pursuant to its inherent power to interpret, and thereby effect, the District Court's own decrees." (citing Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994))).

As in Hanover, here, the Court of International Trade had ancillary jurisdiction to determine the effect of Heartland I on the sugar syrup entries made in reliance on that judgment before its reversal by our court.  Like the motion for civil contempt in Hanover, the complaint at issue in this case alleged that Customs' liquidations and reliquidations

---

[9]    A federal court may exercise ancillary jurisdiction "(1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent; and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees."  Peacock v. Thomas, 516 U.S. 349, 355 (1996) (citation and quotation omitted).

[10]    Under 28 U.S.C. § 1585, the Court of International Trade possesses "all the powers in law and equity of, or as conferred by statute upon, a district court of the United States."

of these entries at the TRQ rate prior to the issuance of the appellate mandate contravened the Court of International Trade's ruling in Heartland I. The Court of International Trade, therefore, had jurisdiction to assess the propriety of Customs' allegedly premature liquidations and reliquidations — purportedly violative of its prior ruling in Heartland I — despite the dismissal of the original action in Heartland III. In other words, the dismissal of Heartland III did not deprive the court of its inherent power to examine the effect of or ensure compliance with its own prior ruling in Heartland I.

While federal courts hold the inherent power to enforce their prior judgments, in determining the reach of such power, the Supreme Court has "cautioned against the exercise of jurisdiction over proceedings that are 'entirely new and original,' or where 'the relief [sought is] of a different kind or on a different principle' than that of the prior decree." Peacock, 516 U.S. at 357-59 (finding no jurisdiction because the second suit involved new theories of liability not asserted in and having little connection with the original suit) (citations omitted, brackets in original). In this regard, the government insists that Heartland's second suit is wholly distinct from the original action, thus requiring an independent jurisdictional predicate. The original case, the government alleges, dealt with the validity of Customs' Revocation Ruling, while this case challenges the application of that ruling through a separate statutory provision, namely § 1625. The government's view of the two actions is myopic. Both cases, as the government implicitly admits, concern Customs' Revocation Ruling. As the Court of International Trade correctly reasoned in Heartland III, "[t]here is an obvious link between the restoration of the [Revocation Ruling] by the Federal Circuit, and determining the effective date of its application." 223 F. Supp. 2d at 1334. Like

Heartland's motion for entry of judgment in Heartland III, this action asks the Court of International Trade to determine the reach of its own judgment in Heartland I and determine the legality of Customs' liquidations and reliquidations in view of that judgment, a task that is always within the court's jurisdiction.[11] See Hanover, 82 F.3d at 1054.

Indeed, requiring Heartland to establish jurisdiction under § 1581(a), including the payment of TRQ duties on its denied protests, to receive a determination as to the proper scope of the trial court's original ruling under § 1581(h) would frustrate the purpose of the latter provision, which was enacted to provide importers with a means for obtaining pre-importation relief without having to pay post-importation duties. As the Court of International Trade correctly explained in Heartland III,

> Section 1581(h) is an extraordinary instrument, and a significant exception to the procedural requirements traditionally placed on those challenging a decision by Customs. Historically, in order to challenge a decision like the Revocation [Ruling] at issue in this case, it was necessary for a party to exhaust remedies available through the administrative agency by filing a protest with Customs. Exhaustion in such a case also requires plaintiffs to pay any duties owed on the entries in question before filing with this court. Section 1581(h) allows for bypassing these procedural and monetary burdens in specific and narrow circumstances, namely, if the importer can demonstrate that it would be irreparably harmed unless given an opportunity to obtain judicial review prior to [an] importation.

223 F. Supp. 2d at 1324 (citations and quotations omitted). It would defy reason for Congress to permit Heartland to obtain pre-importation relief from the Court of

---

[11] The government also renews an argument rejected by the Court of International Trade in Heartland III, that jurisdiction under § 1581(h) cannot lie without prospective rather than actual entries before the court, as required by the statute. This argument only has force if Heartland were required to establish a new basis for § 1581(h) jurisdiction. Because, as we held above, the Court of International Trade has ancillary jurisdiction to assess the scope and effect of its prior decisions, the fact that no prospective entries are at issue is of no moment.

International Trade under § 1581(h), yet require it to invoke an entirely separate and less favorable jurisdictional basis, § 1581(a), to resolve the scope of that relief. We will not impute such intent to Congress. Moreover, settled precedent, discussed above, finds a constitutional basis for ancillary jurisdiction to enforce continually its prior judgments under the same jurisdictional basis supporting the original ruling.

Finally, the government proposes that any harm to Heartland, including the $10 million duty payment needed to meet the requirements for § 1581(a) jurisdiction, is self-inflicted. That is, Heartland chose to rely on the non-stayed but also non-final judgment in Heartland I to continue its sugar syrup imports, the government contends, and failed to challenge the dismissal of the original case in Heartland III, either by filing a motion to vacate the judgment or by appealing to this court. While the government's argument has no bearing on the question of the trial court's jurisdiction over Heartland IV, we note that Heartland had little incentive to pursue a costly appeal from Heartland III, especially in the face of the trial court's directive to work out rulings on protests to invoke jurisdiction under § 1581(a) and the government's representations that it would agree to an expedient and affordable means for establishing jurisdiction under that provision. Heartland's current predicament, in part a result of the Court of International Trade's erroneous dismissal of its motion for entry of judgment in Heartland III and in part a result of the parties' inability to agree on a feasible jurisdictional mechanism, in no way precludes Heartland from having the merits of its complaint heard by the Court of International Trade.

In sum, the Court of International Trade erred by holding that it lacked jurisdiction to determine the temporal scope of its ruling in Heartland I and the effect of our decision

in <u>Heartland II</u> on that ruling. Because we hold that the Court of International Trade had ancillary jurisdiction to determine the effective date the higher TRQ rates applied to Heartland's sugar syrup imports and thus the legality of Customs' actions with regard to the disputed imports, we need not reach Heartland's remaining arguments on appeal, namely, that the Court of International Trade erred by failing to treat its complaint as an independent action under Rule 60(b), or that the trial court erred in holding that it had no jurisdiction to hear Heartland's complaint under § 1581(i).[12]

## CONCLUSION

For the foregoing reasons, the order of the Court of International Trade dismissing Heartland's complaint is reversed, and this case is remanded for further proceedings on the merits.

## <u>REVERSED AND REMANDED</u>

---

[12] Some precedent indicates that the exercise of ancillary jurisdiction might be committed to the discretion of the trial court. <u>See, e.g.</u>, <u>U.S.I. Props. Corp. v. M.D. Construction Co.</u>, 230 F.3d 489, 496 (1st Cir. 2000) ("Ancillary enforcement jurisdiction, given its origins in the courts of equity, traditionally has an equitable and discretionary character."). To the extent that the Court of International Trade may possess such discretion, declining to exercise ancillary jurisdiction in this case would constitute an abuse of that discretion.