INFINITI INFORMATION SOLUTIONS, LLC, Plaintiff,

v.

UNITED STATES, Defendant.

No. 09–750C.

United States Court of Federal Claims.

July 29, 2010.

Janine S. Benton, Benton, Potter & Murdock, PC, Falls Church, Virginia, for plaintiff. With her on the briefs were Kathy Potter, Benton, Potter & Murdock, PC, Falls Church, Virginia, and James DelSordo, Argus Legal, LLC, Manassas, Virginia.

Russell A. Shultis, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With him on the briefs were Tony West, Assistant Attorney General, Civil Division, Jeanne E. Davidson, Director, and Kenneth M. Dintzer, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C. Of counsel were Gregory S. Walters and Gabriel G. Lopez, United States Department of Housing and Urban Development, Denver, Colorado.

## OPINION AND ORDER

LETTOW, Judge.

This post-award bid protest filed by the incumbent contractor, Infiniti Information Solutions, LLC ("Infiniti"), challenged the award of a contract to Ideogenics, LLC ("Ideogenics") to provide internet-related support services for the Department of Housing and Urban Development ("HUD"). That contract had been awarded pursuant to Section 8(a) of the Small Business Act, 15 U.S.C. § 637(a). Previously, the parties filed cross-motions for judgment on the administrative record, and on April 2, 2010, the court granted Infiniti's motion and denied the government's motion, finding "HUD's evaluation and recommendation of Ideogenics to be contrary to law and arbitrary and capricious on two separate and independent grounds." *Infiniti Info. Solutions, LLC v. United States*, 92 Fed.Cl. 347, 359 (2010). The court's decision ordered that the award of the contract to Ideogenics be "set aside." *Id.* at 360. Final judgment was entered to that effect. The time for appeal expired without an appeal having been taken.

Subsequently, on June 2, 2010, the government filed a motion for relief from judgment under Rule 60(b)(6) of the Rules of the Court of Federal Claims ("RCFC"). The government asks the court to allow Ideogenics to continue performing the contract until September 30, 2010, "so that HUD may continue its mission of administering [f]ederal aid to Public Housing Agencies ... without interruption." Def.'s Mot. for Relief from Judgment ("Def.'s Mot.") at 1. The government claims that terminating the contract with Ideogenics prior to September 30, 2010, would result in a loss of "critical technical assistance, maintenance, and support for the ... website" used by HUD to process online plans submitted by public housing authorities regarding various public housing projects.[1] *Id.* at 2–3. The website is also used by HUD to provide guidance in the preparation and submission of plans for public housing projects. *Id.* at 2. Additionally, the government cites disruption in HUD's "plans" should the Ideogenics contract not continue until September 30, 2010, stating that "[c]anceling the Ideogenics contract before September 30, 2010, would disrupt HUD's plans in a man-

---

1. The government also maintains that HUD is currently incapable of providing the internet services internally due to its inability to support the website's software platform and that it could not develop that capability prior to September 30, 2010. App. to Pl.'s Mot. (Decl. of Gay Julian) ¶¶ 7–8.

ner that would not be easily remedied by transferring functions to HUD employees or another contractor." *Id.* at 3. Infiniti opposes the motion, asserting that the government has failed to satisfy the requirements for relief under Rule 60(b)(6). Pl.'s Opp'n to Def.'s Mot. ("Pl.'s Opp'n") at 1.

## ANALYSIS

Prior to addressing the government's motion for relief from the judgment, prudence suggests that the court should examine the legal and factual underpinnings for that judgment, as well as its effect and the timing of that effect, especially in light of the government's failure to take an appeal or otherwise seek a stay of the judgment.

### A. *The Judgment of Declaratory Relief Entered in this Case*

 The Tucker Act, as amended by the Administrative Dispute Resolution Act ("ADRA"), Pub.L. No. 104–320, § 12(a)(3), 110 Stat. 3870, 3874–75 (1996), authorizes this court to grant declaratory relief in bid protest cases:

(1) ... [T]he United States Court of Federal Claims ... shall have jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a [f]ederal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement.... [T]he United States Court of Federal Claims ... shall have jurisdiction to entertain such an action without regard to whether suit is instituted before or after the contract is awarded.

(2) To afford relief in such an action, the courts may award any relief that the court considers proper, *including declaratory and injunctive relief* except that any monetary relief shall be limited to bid preparation and proposal costs.

28 U.S.C. § 1491(b)(1)-(2) (emphasis added).[2] In addition, RCFC 57 evidences the authority of this court to issue a declaration: "These rules govern the procedure for obtaining a declaratory judgment under 28 U.S.C. §§ 1491(b) and 1507. The existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate."[3] Declaratory judgments are desirable from the court's point of view because "a declaratory judgment is a form of relief, based on completed ... actions, that operates to adjust the rights of the parties when the award of a prospective coercive judgment is inappropriate for any number of reasons."

**2.** Prior to the enactment of Subsection (b), the jurisdiction of the Court of Claims was "limited to money claims against the United States" and thus did not include the power to grant declaratory relief. *United States v. King*, 395 U.S. 1, 2–3, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969). *King* was partially superseded by statute when Congress amended Section 1491 as part of the ADRA to include what is currently Subsection (b), which gave the Court of Federal Claims power to grant declaratory relief in bid protest cases, including post-award protests. Nonetheless, at least one commentator has suggested that this court even now lacks the power to grant declaratory relief on the grounds that (1) it does not meet the requirements set forth in 28 U.S.C. § 451 for a "court of the United States" because judges of this court are not appointed for life, and (2) apart from bid protests, the court only has authority to grant monetary relief. 12 James Wm. Moore, et al., *Moore's Federal Practice*, § 57.20 (3d ed.2009) (citing *King*, 395 U.S. at 3–4, 89 S.Ct. 1501; *Overall Roofing Constr. Inc. v. United States*, 929 F.2d 687, 688 (Fed.Cir.1991) (holding that this court then lacked jurisdiction

under the Tucker Act and Contract Disputes Act to review a termination for default not involving a monetary claim)). The second asserted ground is incorrect, and the suggestion is wrong. Reliance on *King* and its progeny is misplaced as the holdings in *King* and *Overall Roofing* were based on a now-outmoded version of Section 1491. In addition, this court has power under the Tucker Act to grant declaratory and injunctive relief in cases where monetary relief is granted, "[t]o provide an entire remedy and to complete the relief afforded by the [money] judgment." 28 U.S.C. § 1491(a)(2). In such cases, the court may "issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records." *Id.* "[S]uch [equitable] orders may be issued to any appropriate official of the United States." *Id.* In addition, 28 U.S.C. § 1507 grants this court authority to issue declaratory judgments in certain types of tax cases.

**3.** RCFC 57 has the same format as Fed.R.Civ.P. 57, with adaptations that specifically reflect this court's jurisdiction.

12 *Moore's Federal Practice* § 57.04[3].[4] In light of the fact that Section 1491(b) explicitly grants this court jurisdiction to award declaratory relief in bid protest cases and the Declaratory Judgment Act provides quotidian procedures for granting such relief, this court has looked to Sections 2201 and 2202 for guidance in exercising the authority provided by Section 1491(b).[5]

■■■ The Declaratory Judgment Act, codified at 28 U.S.C. §§ 2201 and 2202, describes the mechanism used to issue declaratory judgments. The Act operates procedurally only, and, although the Act enlarges the range of available remedies for the federal courts, it does not extend their jurisdiction; thus, for a court to be able to issue a declaratory judgment, it must have jurisdiction over the claim. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–72, 70 S.Ct. 876, 94 L.Ed. 1194 (1950); *see also Cabral v. United States*, 317 Fed.Appx. 979, 981 (Fed.Cir.2008) (stating that the Declaratory Judgment Act does not provide an independent basis for jurisdiction); *Rolls-Royce Ltd. v. United States*, 176 Ct.Cl. 694, 364 F.2d 415, 420 (1966) (same). Section 2202 of the Act indicates that courts authorized to issue declaratory relief can also provide "[f]urther necessary or proper relief based on a declaratory judgment or decree ... after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment." In

this respect, wholly apart from the question whether Section 2202 applies to this court, the court may take action to protect, secure, and enforce a judgment, including a judgment for declaratory relief, so long as the court had juridical power to issue that judgment. *See Riggs v. Johnson County*, 73 U.S. (6 Wall.) 166, 187, 18 L.Ed. 768 (1867) ("[T]he rule is universal, that if the power is conferred to render the judgment or enter the decree, it also includes the power to issue proper process to enforce such judgment or decree."); *Heartland–By–Products, Inc. v. United States*, 424 F.3d 1244, 1252 (Fed.Cir.2005) ("Federal courts hold the inherent power to enforce their prior judgments."); *see also Peacock v. Thomas*, 516 U.S. 349, 356, 116 S.Ct. 862, 133 L.Ed.2d 817 (1996) ("Without jurisdiction to enforce a judgment entered by a federal court, the judicial power would be incomplete and entirely inadequate to the purposes for which it was conferred by the Constitution.").

As noted previously, the judgment entered on April 2 declared that the contract awarded to Ideogenics was "set aside." *Infiniti Info.*, 92 Fed.Cl. at 360. The Ideogenics contract, therefore, no longer existed as soon as that judgment came into force. The judgment entered on April 2, 2010, pursuant to the *Infiniti Information* decision, was not immediately effective, as an injunction would have been, because an automatic 14–day hiatus occurred as required by RCFC 62(a).[6]

---

4. In bid protest cases, declaratory relief in the form of an order setting aside a protested contract can have coercive effects. *See PGBA, LLC v. United States*, 389 F.3d 1219, 1228 (Fed.Cir. 2004) ("PGBA still claims that it is entitled to further relief [beyond an award of bid preparation and proposal costs] in the form of an order setting aside the award and thereby stopping performance [under the contract as awarded]. This is tantamount to a request for injunctive relief.") (citing *Samuels v. Mackell*, 401 U.S. 66, 71–73, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971); *Maryland Citizens for a Representative Gen. Assembly v. Governor of Md.*, 429 F.2d 606, 611 (4th Cir.1970)).

5. The Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, probably does not apply directly to actions for declaratory relief in the Court of Federal Claims because that Act pertains to a "court of the United States" without defining that term. 28 U.S.C. § 2201(a). Section 451 of

Title 28 defines "court of the United States" generally and does not refer to the Court of Federal Claims. Comparatively, the Court of Federal Claims is explicitly considered a "court of the United States" for purposes of other sections of Title 28. *E.g.*, 28 U.S.C. §§ 610, 963 (referring back to § 610), 2503 (stating that the Court of Federal Claims is considered a "court of the United States" for purposes of 28 U.S.C. §§ 1821, 1915, 1920, 1927). Yet other portions of Title 28 specifically refer only to district courts, in effect excluding the Court of Federal Claims. *See, e.g.*, 28 U.S.C. § 2241 (giving power to grant writs of habeas corpus to the district courts, circuit courts, and the Supreme Court).

6. RCFC 62(a) provides, in relevant part: "Except as stated in this rule, no execution may issue on a judgment, nor may proceedings be taken to enforce it, until 14 days have passed after its entry," but excluding from this rule-mandated stay "an interlocutory or final judgment in an

In addition, because service of the judgment was made electronically under RCFC 5(b)(2)(E), three additional days were added to the 14–day automatic stay in accordance with RCFC 6(d).[7] Consequently, the declaratory judgment setting aside the contractual award to Ideogenics came into force on April 19, 2010. At that point the Ideogenics contract effectively ceased to exist.

Nevertheless, it seems that both Ideogenics and the government have continued performance, despite the lack of any contract between them, which means that the government's motion is implicitly asking the court to resurrect a contract that became a nullity on April 19, 2010. *See* Def.'s Mot. at 1.

### B. *The Rule 60(b)(6) Motion*

■ The government asserts that relief from judgment is necessary for HUD to "continue [to perform] its mission" of managing public housing without the "risk of a serious interruption" in its online application management software. Def.'s Mot. at 1, 3, relying on Rule 60(b)(6). Infiniti responds that "[d]efendant has failed to meet its burden [to show] that it is entitled to relief under ... [Rule] 60(b)(6) and it should not be allowed to use [that rule] to avoid a judgment against it." Pl.'s Opp'n at 2. In full, Rule 60(b) provides:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under RCFC 59(b);
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released, or discharged; it is based on an

earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

> (6) *any other reason that justifies relief.*

(Emphasis added).[8] Motions filed under Rule 60(b)(6) should be evaluated on a case by case basis, with the court balancing the value of finality with the need for justice. *See* 12 *Moore's Federal Practice* § 60.02[2] ("Rule 60(b) enables a court to grant relief from a judgment in circumstances in which the need for truth outweighs the value of finality in litigation.") (citing Mary Kay Kane, *Relief from Federal Judgments: A Morass Unrelieved by a Rule*, 30 Hastings L.J. 41, 42 (1978)); *see also Freeman v. Secretary of Dep't of Health and Human Servs.*, 35 Fed.Cl. 280, 283 (1996).

■ Rule 60(b)(6) has consistently been described by courts as a "catch-all" provision that essentially represents the last resort for a litigant urging a court to exercise its "grand reservoir of equitable power to do justice in a particular case." *Compton v. Alton S.S. Co.*, 608 F.2d 96, 106 (4th Cir. 1979) (internal quotations omitted). This power, however, does not constitute permission for the court to use unfettered discretion; rather, well-established limitations constrain the court's ability to grant a Rule 60(b)(6) motion. These are: (1) the grounds asserted for relief must not be the same as those listed in Rule 60(b)(1)-(5), and (2) there must be a valid reason that justifies affording the relief, usually broadly described as "extraordinary circumstances." *Fiskars, Inc. v. Hunt Mfg. Co.*, 279 F.3d 1378, 1382 (Fed.Cir. 2002).

The Supreme Court has emphasized that "Rule 60(b)(6) ... grants federal courts broad authority to relieve a party from a final judgment ... provided that the motion ... is not premised on one of the grounds for relief enumerated in clauses (b)(1) through (b)(5)." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863, 108 S.Ct. 2194,

---

action for an injunction or a receivership" or "a judgment or order that directs an accounting in an action for patent infringement."

**7.** RCFC 6(d) provides: "When a party may or must act within a specified time after service and

service is made under RCFC 5(b)(2)(C), (D), (E), or (F), 3 days are added after the period would otherwise expire under RCFC 6(a)."

**8.** RCFC 60(b)(6) is identical to Fed.R.Civ.P. 60(b)(6).

100 L.Ed.2d 855 (1988). Here, the government avers "unnecessary hardship," Def.'s Reply to Pl.'s Opp'n to Mot. for Relief from Judgment ("Def.'s Reply") at 4, because "[r]equiring HUD to terminate the contract with Ideogenics before September 30, 2010, would undermine HUD's mission." Def.'s Mot. at 4. This ground does not fit within any of the reasons listed in Rule 60(b)(1)-(5), and thus relief would be procedurally proper, but if, and only if, the government also can demonstrate "extraordinary circumstances" justifying such relief. *CNA Corp. v. United States,* 83 Fed.Cl. 1, 8 (2008), *aff'd,* 332 Fed. Appx. 638 (Fed.Cir.2009).[9]

The "extraordinary circumstances" standard emerged from two Supreme Court cases that were decided a year apart, *Klapprott v. United States,* 335 U.S. 601, 69 S.Ct. 384, 93 L.Ed. 266 (1949), and *Ackermann v. United States,* 340 U.S. 193, 71 S.Ct. 209, 95 L.Ed. 207 (1950). In *Klapprott,* the plaintiff successfully moved the Court to set aside a default judgment in a denaturalization proceeding several years after that judgment was entered, where at the time of the proceeding, plaintiff was destitute, ill, and in prison on unrelated criminal charges. *Klapprott,* 335 U.S. at 614-15, 69 S.Ct. 384.[10] One year later, the Court decided *Ackermann.* In contrast to *Klapprott,* the plaintiff in *Ackermann* had personally been involved in trial proceedings attendant to the denaturalization process in which the court found against him. *Ackermann,* 340 U.S. at 195, 71 S.Ct. 209. His brother-in-law, also a co-defendant in the proceedings, chose to appeal the adverse judgment, and the court of appeals reversed the denaturalization judgment. *Id.* Plaintiff then moved for relief under Rule 60(b)(6) on the ground that, among other things, the reversal of his brother-in-law's case demonstrated that the judgment was legally wrong. *Id.* at 197, 71 S.Ct. 209. The Supreme Court disagreed, finding that unlike in *Klapprott,* plaintiff's situation did not involve "extraordinary circumstances." *Id.* at 199, 202, 71 S.Ct. 209. Key to the distinction the Court drew between *Ackermann* and *Klapprott* was "the difference between no choice and choice; imprisonment and freedom of action; no trial and trial; no counsel and counsel; no chance for negligence and inexcusable negligence.... Neither the circumstances of the petitioner nor his excuse for not appealing is so extraordinary as to bring him within ... Rule 60(b)(6)." *Id.* at 202, 71 S.Ct. 209.

 Essentially, the *Klapprott–Ackermann* dichotomy underlies the majority of rulings on 60(b)(6) motions. *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 393, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993) ("To justify relief under [Rule 60(b)(6)], a party must show 'extraordinary circumstances' *suggesting that the party was faultless.*") (emphasis added); *see also* 12 *Moore's Federal Practice* § 60.48[3][b] ("In a vast majority of the cases finding that extraordinary circumstances do exist so as to justify relief, the movant is completely without fault for his or her predicament."); *CNA Corp.,* 83 Fed.Cl. at 8 (citing *Moore's Federal Practice* ). Beyond the general fault-no fault guidepost, the Federal Circuit has not drawn any bright lines regarding what constitutes "extraordinary circumstances." *See id.* (citing *Fiskars,* 279 F.3d at 1382).[11] In this

---

**9.** Black's Law Dictionary defines an extraordinary circumstance as "[a] highly unusual set of facts that are not commonly associated with a particular thing or event." *Black's Law Dictionary* 277 (9th ed.2009).

**10.** In doing so, Justice Black opined that

[P]etitioner's allegations set up an extraordinary situation which cannot fairly or logically be classified as mere "neglect" on his part.... The basis of his petition was not that he had neglected to act in his own defense, but that in jail as he was, weakened with illness, without a lawyer in the denaturalization proceedings or funds to hire one, disturbed and fully occupied in efforts to protect himself against the gravest criminal charges, he was no more able to

defend himself in the New Jersey court than he would have been if he had never received notice of the charges.

*Klapprott,* 335 U.S. at 613-14, 69 S.Ct. 384.

**11.** Notably, the failure of a party to appeal cannot be appropriate grounds for a Rule 60(b)(6) motion because courts will not intervene to relieve a party from adverse consequences resulting from his or her choice of strategy. *See Reitz v. United States,* 37 Fed.Cl. 330, 333 (1997) (citing *Ackermann,* 340 U.S. at 197, 71 S.Ct. 209). Examples of "extraordinary circumstances" sufficient to warrant relief under Rule 60(b)(6), have been found to include: when proceedings may have taken place without the knowledge of the "losing party" and through no fault of that party,

respect, another judge on this court has observed that Rule 60(b)(6) "has been used sparingly as an equitable remedy to prevent manifest injustice and is to be utilized only where extraordinary circumstances prevented a party from taking timely action to prevent or correct an erroneous judgment. Thus, a party seeking to reopen a case under Rule 60(b)(6) must demonstrate both injury and circumstances beyond his control that prevented him from proceeding with the prosecution or defense of the action in proper fashion." *Bank of Am., FSB v. United States,* 70 Fed.Cl. 246, 253 n. 8 (2006) (quoting *United States v. Washington,* 394 F.3d 1152, 1157 (9th Cir.2005)) (internal quotations and citations omitted). In short, a party may not use Rule 60(b)(6) as a "do-over" for failing to meet its "duty to take legal steps to protect his own interests." 11 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 2864 (2d ed.1995). Likewise, as another court has stated, a litigant cannot use Rule 60(b)(6) to "rescue" himself "from strategic choices that later turn[ ] out to be improvident." *Good Luck Nursing Home, Inc. v. Harris,* 636 F.2d 572, 577 (D.C.Cir.1980). As an equitable remedy, the "balancing [of] 'all of the factors arising in a Rule 60(b) motion is committed to the sound discretion of the trial court.'" *CNA Corp.* 83 Fed.Cl. at 7–8 (quoting *W.L. Gore & Assocs., Inc. v. C.R. Bard, Inc.,* 977 F.2d 558, 562 (Fed.Cir.1992)).

 Here, the government's motion fails to present the "extraordinary circumstances" necessary to justify relief under Rule 60(b)(6). The fact that HUD may experience difficulty related to its inability internally to support its own website, *see* Def.'s Mot. at 2–3, does not present a scenario where the government has found itself in a quandary beyond its control. Following the decision and judgment rendered April 2, 2010, the government chose to forgo the standard avenues for contesting the results, neither moving for a stay, nor seeking reconsideration, nor filing an appeal. The government may not now seek to rescue itself from the effects of an adverse outcome by asserting, rather circularly, that the outcome is adverse. The court is also mindful that despite the declaratory judgment having become effective on April 19, rendering the contractual award to Ideogenics a nullity, HUD and Ideogenics nonetheless appear to have treated the contract as remaining in full force and effect.[12]

## CONCLUSION

For the reasons stated, the government's motion for relief from judgment is DENIED.

It is so ORDERED.

---

*National Credit Union Admin. v. Gray,* 1 F.3d 262, 266 (4th Cir.1993); the existence of unusual combinations of health and financial difficulties, *Randall v. Merrill Lynch,* 820 F.2d 1317, 1320 (D.C.Cir.1987); when clarification of the judgment was necessary because the opposing party attempted to attach conditions to its compliance with the judgment, *Kramer v. Gates,* 481 F.3d 788, 793 (D.C.Cir.2007); and when there was gross negligence or severe misconduct by counsel, *Freeman,* 35 Fed.Cl. at 283–84. By contrast, courts have not granted relief when there have been post judgment changes in the law, *United States ex rel. Garibaldi v. Orleans Parish Sch. Bd.,* 397 F.3d 334, 337–40 (5th Cir.2005).

**12.** Further, Infiniti asserts that HUD previously allowed the internet service support contract to "go unperformed during [this] ... protest" action for a period of time until HUD secured the Ideogenics contract, Pl.'s Opp'n at 4, an assertion which if true potentially undermines the government's claim of the potential for severe interruption in functionality and service without the internet support presently provided by Ideogenics.