# United States Court of Appeals for the Federal Circuit

2007-1007

UNITED STATES,

Plaintiff-Appellee,

v.

NATIONAL SEMICONDUCTOR CORPORATION,

Defendant-Appellant.

Stephen C. Tosini, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for plaintiff-appellee. With him on the brief were Peter D. Keisler, Assistant Attorney General, Jeanne E. Davidson, Acting Director, and Patricia M. McCarthy, Assistant Director.

Robert Scott Whiteley, Horton, Whiteley & Cooper, of Oakland, California, argued for defendant-appellant. With him on the brief was Craig A. Mitchell.

John M. Peterson, Neville Peterson LLP, of New York, New York, for amicus curiae, American Association of Exporters and Importers. With him on the brief were Curtis W. Knauss and Maria E. Celis.

Appealed from: United States Court of International Trade

Senior Judge R. Kenton Musgrave

# United States Court of Appeals for the Federal Circuit

2007-1007

UNITED STATES,

Plaintiff-Appellee,

v.

NATIONAL SEMICONDUCTOR CORPORATION,

Defendant-Appellant.

DECIDED: July 27, 2007

Before MAYER, SCHALL, and PROST, Circuit Judges.

SCHALL, Circuit Judge.

National Semiconductor Corporation ("NSC") appeals the final judgment of the United States Court of International Trade awarding the United States (1) a penalty award in the amount of $10,000 under 19 U.S.C. § 1592(c)(4); (2) compensatory interest in the amount of $250,840.21 under 19 U.S.C. § 1505(c); and (3) prejudgment interest on the amounts in (1) and (2). See United States v. Nat'l Semiconductor Corp., No. 03-00223, 2006 WL 2578215 (Ct. Int'l Trade Sept. 8, 2006) (NSC III). The court entered judgment in favor of the United States based on NSC having made erroneous statements in entry documents when entering merchandise into the United States. NSC

voluntarily disclosed the erroneous statements to Customs and Border Protection ("Customs") when it discovered them.

Because the Court of International Trade erred in reaching beyond the penalty provision of 19 U.S.C. § 1592(c)(4) to award compensatory interest under 19 U.S.C. § 1505(c), we vacate the court's judgment and remand the case to the court. On remand, the Court of International Trade is to determine (i) the appropriate penalty due under section 1592(c)(4) in the absence of a compensatory interest award and (ii) whether prejudgment interest may be awarded on that penalty.

## BACKGROUND

### I.

Following an internal customs compliance review, NSC discovered that it had undervalued certain integrated circuits, micro-assemblies, and parts thereof when these items were entered into the United States. NSC determined that this undervaluation resulted in two groups of erroneous customs entries pertaining to importations between 1993 and 2000. While the erroneous entries did not result in a loss of duties to the United States, they did result in unpaid merchandise processing fees ("MPFs").[1] Prior to Customs discovering the errors, NSC voluntarily disclosed them and timely tendered the $948,159.13 in unpaid MPFs that Customs determined was due.

---

[1] An MPF is an <u>ad valorem</u> tax on imported merchandise.

Customs accepted the tender, but determined that negligent violations of 19 U.S.C. § 1592(a) were the cause of each erroneous entry.[2]  Pursuant to 19 U.S.C. § 1592(c)(4), Customs may assess penalties for violations of section 1592(a).  Section 1592(c)(4) states in relevant part:

(c) Maximum penalties

. . . .

(4) Prior disclosure

If the person concerned discloses the circumstances of a violation of subsection (a) of this section before, or without knowledge of, the commencement of a formal investigation of such violation, with respect to such violation, merchandise shall not be seized and any monetary penalty to be assessed under subsection (c) of this section shall not exceed—

. . . .

(B) if such violation resulted from negligence or gross negligence, the interest (computed from the date of liquidation at the prevailing rate of interest applied under section 6621 of Title 26) on the amount of lawful duties, taxes, and fees of which the United States is or may be deprived so long as such person tenders the unpaid amount of the lawful duties, taxes, and fees at the time of disclosure, or within 30 days (or such longer period as the Customs Service may provide) after notice by the Customs Service of its calculation of such unpaid amount.

(emphases added).  In due course, Customs sent notices to NSC assessing the maximum statutory penalty it could assess under section 1592(c)(4) for each

---

[2]     Section 1592(a)(1) states:

Without regard to whether the United States is or may be deprived of all or a portion of any lawful duty, tax, or fee thereby, no person, by fraud, gross negligence, or negligence—
  (A) may enter, introduce, or attempt to enter or introduce any merchandise into the commerce of the United States by means of—
    (i) any document or electronically transmitted data or information, written or oral statement, or act which is material and false . . . .

2007-1007                                3

violation—interest from the date of liquidation on the amount of the fees of which the United States had been deprived. This was calculated by Customs to be $228,924.75 and $21,915.46, respectively, for the two groups of entries. NSC protested the assessment. While acknowledging that it had been negligent, it took the position that it should not be assessed the maximum penalty because it had acted responsibly by voluntarily reporting the erroneous entries on its own initiative before Customs discovered them. Following NSC's protest, the government brought suit in the Court of International Trade seeking to collect the $250,840.21 penalty ($228,924.75 plus $21,915.46) it had assessed against NSC for violation of section 1592(a).

II.

Eventually, the parties filed cross-motions for summary judgment, which the Court of International Trade denied in United States v. National Semiconductor Corp., No. 03-00223, 2005 WL 189748 (Ct. Int'l Trade Jan. 26, 2005) (NSC I). Thereafter, following a bench trial, the court issued a decision in which it considered each of the fourteen non-exclusive factors discussed in United States v. Complex Machine Works Co., 83 F. Supp. 2d 1307 (Ct. Int'l Trade 1999). United States v. Nat'l Semiconductor Corp., No. 03-00223, 2006 WL 1663279 (Ct. Int'l Trade June 16, 2006) (NSC II). These are factors the Court of International Trade may consider when determining the appropriateness of a civil penalty for a violation of customs laws. See id. at *2. The Complex Machine Works factors are

> (1) the defendant's good faith effort to comply with the statute; (2) the degree of culpability involved; (3) the defendant's history of previous violations; (4) the nature of the public interest in ensuring compliance with the applicable law; (5) the nature and circumstances of the violation; (6) the gravity of the violation; (7) the defendant's ability to pay; (8) the appropriateness of the size of the penalty vis-à-vis the defendant's

business and the effect of the penalty on the defendant's ability to continue doing business; (9) the economic benefit gained by the defendant through the violation; (10) whether the party sought to be protected by the statute is elsewhere adequately compensated for the harm; (11) the degree of harm to the public; (12) the value of vindicating agency authority; (13) whether the penalty shocks the conscience of the court; and (14) such other matters as justice may require.

Complex Mach. Works, 83 F. Supp. 2d at 1315.  After considering each factor individually, the court determined that partial mitigation was appropriate.  It therefore awarded the government an "interest-only" penalty of $10,000, calculated in accordance with section 1592(c)(4) from the original date of liquidation to the date of the demand that Customs issued to NSC.  NSC II, 2006 WL 1663279 at *2-6.

In its decision, the Court of International Trade determined that the tenth Complex Machine Works factor—whether the party sought to be protected by the statute is elsewhere adequately compensated for the harm—deserved the heaviest weighting.  Id. at *4.  The court concluded that NSC's payment of the unpaid MPFs and the imposition of the maximum allowable penalty ($250,840.21) did not fully compensate the government for the full harm done because the government would not recoup the interest it would have been able to earn on the MPFs had they been paid at the proper time.  Id.  The court reasoned that the maximum allowable penalty under section 1592(c)(4) would, at most, equal interest on the unpaid MPFs from the date of liquidation to the time of payment.  This, the court determined, still would leave the government without compensation for the interest it could have earned from the date of entry until the date of liquidation.  Accordingly, the court found,

as a matter of fact, that compensatory interest would make the government whole, and that the government is entitled to it in accordance with 19 U.S.C. § 1505(c). That provision requires interest to be assessed on underpayments or overpayments from the date of entry to the date of "liquidation or reliquidation."

Id.

In order to calculate its award of compensatory interest, the Court of International Trade found it necessary to determine the "reliquidation" date. This was because the court reasoned that where a further disposition is necessary to correct negligence in an original entry, the disposition amounts to a "reliquidation" of the entry as a matter of law. Id. at *5. Therefore, in this case, Customs' acceptance of the amounts tendered by NSC as repayment of underpaid MPFs amounted to a "reliquidation" of those entries. Consequently, the court determined that the government was entitled to a total award composed of $10,000 as a penalty under section 1592(c)(4) and compensatory interest under section 1505(c).[3] Id. at *6.

NSC filed a motion for reconsideration, asking the Court of International Trade to eliminate the compensatory interest award of NSC II as without a proper statutory basis, and to enter judgment solely for a $10,000 penalty. NSC III, 2006 WL 2578215 at *1. For its part, the government agreed with the court that it should be made as close to whole as possible. However, the government asked the court to clarify its judgment by

---

[3] The court's opinion in NSC II does not specify the amount of the compensatory interest award. NSC II does specify that the government is entitled to compensatory interest "in accordance with 19 U.S.C. § 1505(c)." NSC II, 2006 WL 1663279 at *6. Section 1505(c) states that "interest shall accrue, at a rate determined by the Secretary, from the date the importer of record is required to deposit estimated duties fees, and interest, to the date of liquidation or reliquidation of the applicable entry to reconciliation." The court did determine that the reliquidation date was the date Customs accepted the unpaid MPFs. Presumably, the calculation of the compensatory interest award was left to Customs to determine based on the "rate determined by the Secretary" in accordance with the statute.

noting that the final amount due was capped by the accrued interest on the unpaid MPFs from the date of liquidation until the date of tender, in accordance with the penalty limitation in 19 U.S.C. § 1592(c)(4)(B). Id. at *3-4. The government also asked for prejudgment interest on that amount. Id. at *4. Responding to the government's request, the Court of International Trade stated: "[T]he Secretary of the Treasury has discretion over the calculation of Customs' compensatory interest . . . and if the government is content to regard a lesser amount as 'full' compensation of the U.S. Treasury . . . then so be it." Id. at *4. Accordingly, the court assented to the government's request and found modification of the compensatory interest award to the certain amount of $250,840.21 to be "adequate" compensation for purposes of the tenth Complex Machine Works factor. Id. Accordingly, the court entered final judgment in the amount of $260,840.21 ($250,840.21 in compensatory interest under section 1505(c) and $10,000 as a penalty award under section 1592(c)(4)) plus prejudgment interest.[4] Id.

NSC now appeals from this judgment. We have jurisdiction over an appeal from a final decision of the Court of International Trade pursuant to 28 U.S.C. § 1295(a)(3).

---

[4] There is some disagreement between the parties as to whether the final judgment that was entered by the Court of International Trade includes the $10,000 that was awarded as a penalty. However, our reading of the record is that the award of $10,000 was made and that the court declined to disturb that award when it modified the compensatory interest award from the amount calculated according to section 1505(c) to $250,840.21. This matter can be resolved on remand.

DISCUSSION

I.

NSC argues that the Court of International Trade abused its discretion in awarding non-penal "compensatory interest" under 19 U.S.C. § 1505(c) in an action to collect an interest penalty pursuant to the prior disclosure statute, 19 U.S.C. § 1592. NSC contends that section 1592(c)(4)(B) itself does not provide for collection of interest, but rather uses interest only as a basis to set forth the maximum allowable penalty, i.e., no penalty amount may exceed the amount of that interest. NSC urges that section 1505(c) does not provide for collection of interest either, but rather prescribes the rate at which interest shall accrue, and the period of accrual, in cases where the amount of duties, taxes, and fees assessed upon liquidation of an entry differs from the amount deposited at the time of entry. NSC notes that section 1505(c) is not applicable outside the context of a liquidation or reliquidation and asserts that there is no support for the Court of International Trade's determination that Customs' acceptance of the underpaid MPFs effected a reliquidation. Therefore, according to NSC, the only recovery available to the government is the penalty of $10,000 that was properly awarded under section 1592(c)(4).

The government responds that the Court of International Trade did not undertake a separate legal analysis pursuant to section 1505(c) to grant compensatory interest. Rather, according to the government, the compensatory interest award resulted from the court's analysis of the tenth Complex Machine Works factor—whether the party sought to be protected by the statute is elsewhere adequately compensated for the harm. The government states that the award of $250,840.21 was to adequately

compensate the government for the interest value it lost when the MPFs were not timely paid. Furthermore, the government urges, even if the Court of International Trade did erroneously rely on section 1505(c) as part of its reasoning to award compensatory interest, its error was harmless. The government argues that adequate compensation to the Treasury is the primary objective of a penalty action under section 1592(c)(4), and that the substance of what the Court of International Trade did was to follow the policy that the government should be made whole.

"We review the Court of International Trade's legal determinations without deference." United States v. Ford Motor Co., 463 F.3d 1267, 1273 (Fed. Cir. 2006) (citing United States v. Hitachi Am., Ltd., 172 F.3d 1319, 1326 (Fed. Cir. 1999)). "Where, as here, Congress has delegated to the judiciary discretion to determine the amount of civil penalties under a statute, we review the trial court's calculation of such penalties for abuse of discretion." Id. at 1274.

## II.

We hold that the Court of International Trade erred in awarding compensatory interest to the government under 19 U.S.C. § 1505(c).[5] In interpreting a statute, we look first to the plain and unambiguous meaning of its language. See Robinson v. Shell Oil Co., 519 U.S. 337, 340 (1997) ("Our first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the

---

[5]     Contrary to the government's suggestion, there is no question that the court looked to section 1505(c) as the authority for its award of compensatory interest. As noted above, the court stated: "[A]s a matter of fact, . . . compensatory interest would make the government whole, and . . . the government is entitled to it in accordance with 19 U.S.C. § 1505(c). That provision requires interest to be assessed on underpayments or overpayments from the date of entry to the date of 'liquidation or reliquidation.'" NSC II, 2006 WL 1663279 at *4.

particular dispute in the case. Our inquiry must cease if the statutory language is unambiguous and 'the statutory scheme is coherent and consistent.'" (quoting United States v. Ron Pair Enters., Inc., 489 U.S. 235, 240 (1989))); see also Crawfish Processors Alliance v. United States, 477 F.3d 1375, 1379 (Fed. Cir. 2007).  The government brought this action to recover a penalty, pursuant to 19 U.S.C. § 1592(c)(4), for erroneous entries of merchandise into the United States in violation of 19 U.S.C. § 1592(a).  Under section 1592(c), the amount of the penalty that the government may recover varies based on the level of culpability of the importer and whether the importer discloses the error before it is independently discovered by Customs.  Where an importer's violation of section 1592(a) is due to negligence, and the importer voluntarily discloses the circumstances of the violation to Customs, "any monetary penalty to be assessed . . . shall not exceed . . . the interest . . . on the amount of lawful duties, taxes, and fees of which the United States is or may be deprived so long as such person tenders the unpaid amount . . . within 30 days."  19 U.S.C. § 1592(c)(4)(B).[6]  This language unambiguously caps the amount the government may recover.  There is nothing in the statutory language providing for recovery by Customs of non-penal compensatory interest in an action to collect an interest penalty pursuant to section 1592(c).

---

[6]    Any unpaid duties, taxes, or fees must be paid whenever there is a violation of section 1592(a), whether or not a monetary penalty is assessed.  See 19 U.S.C. § 1592(d).  It is undisputed that NSC timely tendered the unpaid fees in this case.

At the same time, we are unable to find authority for an independent application of 19 U.S.C. § 1505(c) under the circumstances of this case.  Section 1505(c) states, in relevant part:

> Interest assessed due to an underpayment of duties, fees, or interest shall accrue, at a rate determined by the Secretary, from the date the importer of record is required to deposit estimated duties, fees, and interest to the date of liquidation or reliquidation of the applicable entry or reconciliation.

(emphasis added).  Thus, per the language of the statute, there must be a "liquidation or reliquidation" of an entry at a higher rate of duty, fee, or tax for the government to recover compensatory interest under section 1505(c).  Liquidation is defined as "the final computation or ascertainment of the duties or drawback accruing on an entry."  19 C.F.R. § 159.1.  Under Customs regulations, "[e]xcept as provided in § 159.12, an entry not liquidated within 1 year from the date of entry of the merchandise, or the date of final withdrawal of all merchandise covered by a warehouse entry, shall be deemed liquidated by operation of law."  19 C.F.R. § 159.11(a).  Under 19 C.F.R. § 159.12, Customs may extend liquidation for an additional period of time under specified conditions.  It is undisputed that, in this case, more than one year had passed from the date of NSC's erroneous entries to the date when NSC notified Customs of the error and that none of the exceptions under section 159.12 apply.  Thus, the entries at issue in this case had already been liquidated and were final as a matter of law.  Per the statutory scheme, when the time for protesting a liquidation or voluntarily reliquidating has passed, liquidation is said to be final and conclusive as against all claims by both the government and the importer.  See 19 U.S.C. § 1514(a).[7]  What this means is that

---

[7]     Section 1514 states, in relevant part:

in this case, there could be no accrual of interest on the unpaid MPFs during the period prior to final "liquidation" for purposes of section 1505(c).

Furthermore, the entries in this case were never reliquidated. Congress has explicitly provided for reliquidation in certain circumstances. See 19 U.S.C. § 1501 (voluntary reliquidations by Customs within ninety days from the date on which notice of the original liquidation is given or transmitted to the importer); 19 U.S.C. § 1509 (within two years of original liquidation Customs may reliquidate without regard to preferential rate claim where importer fails to provide records supporting such claim); 19 U.S.C. § 1520(d) (within one year of date of entry importer who failed to claim preferential

---

(a) Finality of decisions; return of papers

Except as provided in subsection (b) of this section, section 1501 of this title (relating to voluntary reliquidations), section 1516 of this title (relating to petitions by domestic interested parties), and section 1520 of this title (relating to refunds), any clerical error, mistake of fact, or other inadvertence, whether or not resulting from or contained in an electronic transmission, adverse to the importer, in any entry, liquidation, or reliquidation, and, decisions of the Customs Service, including the legality of all orders and findings entering into the same, as to—

. . . .

(5) the liquidation or reliquidation of an entry, or reconciliation as to the issues contained therein, or any modification thereof, including the liquidation of an entry, pursuant to either section 1500 or section 1504 of this title;

. . . .

shall be final and conclusive upon all persons (including the United States and any officer thereof) unless a protest is filed in accordance with this section, or unless a civil action contesting the denial of a protest, in whole or in part, is commenced in the United States Court of International Trade in accordance with chapter 169 of Title 28 within the time prescribed by section 2636 of that title.

treatment under Free Trade Agreement may petition to reliquidate the entry). The codification of the different situations in which Customs may reliquidate indicates the situations wherein Congress determined it was appropriate to disturb the finality of the original liquidation. Notably, section 1592 does not refer to reliquidation where there is a violation of section 1592(a). This indicates that Congress chose not to include violations of section 1592(a) in the carefully carved out exceptions to the finality of liquidations. In short, we are unable to find support for the Court of International Trade's theory that Customs' acceptance of the amounts tendered by NSC as repayment of underpaid MPFs amounted to a "reliquidation" of those entries for purposes of section 1505(c).

In addition, we are unable to agree with the government that the error in this case was harmless. The decision of the Court of International Trade was erroneous insofar as it awarded compensatory interest under 19 U.S.C. § 1505(c) in this action, which was a suit to collect an interest penalty pursuant to 19 U.S.C. § 1592(c)(4). The error was based upon a misapplication of the law and resulted in an award to the government in excess of that authorized by the statute. In light of the fact that the court relied heavily on the erroneous award of compensatory interest in determining the appropriate penalty amount under section 1592(c)(4), the decision of the court must be vacated and the case remanded for a re-determination of the penalty.

Finally, the parties dispute whether the Court of International Trade's award of prejudgment interest was appropriate. NSC contends that there is no certain award of damages upon which a claim of prejudgment interest may run and notes that, in the past, the Court of International Trade has awarded prejudgment interest only in

connection with a penalty demand on unpaid duties. The government responds that the prejudgment interest award was within the Court of International Trade's discretion, given the readily ascertainable injury to the government arising from NSC's violations. We leave the determination of whether prejudgment interest is available in the case of an award solely under section 1592(c)(4) for the Court of International Trade to decide in the first instance on remand.

## CONCLUSION

The Court of International Trade erred in awarding compensatory interest under 19 U.S.C. § 1505(c) in this action to collect an interest penalty under 19 U.S.C. § 1592(c)(4). The judgment of the Court of International Trade in favor of the United States is vacated. The case is remanded to the Court of International Trade, which is instructed to conduct a Complex Machine Works analysis solely under 19 U.S.C. § 1592(c)(4). In addition, it will be for the Court of International Trade to determine in the first instance on remand whether prejudgment interest is appropriate on any award that it makes under section 1592(c)(4).

## VACATED and REMANDED