# United States Court of Appeals for the Federal Circuit

2008-1245

HEARTLAND BY-PRODUCTS, INC.,

Plaintiff-Appellee,

v.

UNITED STATES,

Defendant-Appellant.


Stanley McDermott, III, DLA Piper US LLP, of New York, New York, argued for plaintiff-appellee. Of counsel on the brief were Daniel J. Gluck and Robert M. Klingon, Simon Gluck & Kane LLP, of New York, New York.

Aimee Lee, Trial Attorney, International Trade Field Office, Civil Division, United States Department of Justice, of New York, New York, argued for defendant-appellant. With her on the brief were Jeanne E. Davidson, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC. Of counsel on the brief was Yelena Slepak, Attorney, Office of Assistant Chief Counsel, United States Customs & Border Protection, of New York, New York. Of counsel was Karen P. Binder, Attorney, Office of Assistant Chief Counsel, International Trade Litigation, United States Customs and Border Protection, of New York, New York.

Appealed from: United States Court of International Trade

Judge Judith M. Barzilay

# United States Court of Appeals for the Federal Circuit

2008-1245

HEARTLAND BY-PRODUCTS, INC.,

Plaintiff-Appellee,

v.

UNITED STATES,

Defendant-Appellant.

Appeal from the United States Court of International Trade in case no. 03-00307, Judge Judith M. Barzilay.

_____

DECIDED:    June 10, 2009

_____

Before GAJARSA, CLEVENGER, and DYK, Circuit Judges.

DYK, Circuit Judge.

This case primarily presents the question whether our customs duty classification decision in Heartland By-Products, Inc. v. United States, 264 F.3d 1126 (Fed. Cir. 2001) ("Heartland II") must be treated by the Court of International Trade as retroactive as to entries made before our Heartland II decision. We hold that the Court of International Trade erred in holding that our Heartland II decision was not retroactive, and we reverse.

However, Heartland By-Products, Inc. ("Heartland"), also asserts that U.S. Customs and Border Protection ("Customs") acted unlawfully in liquidating or reliquidating entries during the period between our decision in Heartland II and the

issuance of the <u>Heartland II</u> mandate. The United States ("the government"), as a matter of policy, has agreed not to attempt to collect duties at the high Tariff Rate Quota ("TRQ") rate approved in <u>Heartland II</u> with respect to entries liquidated or reliquidated at the low non-TRQ rate before the issuance of our <u>Heartland II</u> mandate. We conclude that Heartland's request for coercive relief as to these entries is moot.

BACKGROUND

This is the third time that this dispute between Heartland and Customs has come before our court. The dispute began in 1995 when Heartland requested, and Customs issued, a ruling letter classifying the sugar syrup Heartland planned to import as exempt from high TRQ duties on sugar.[1] Heartland then established a sugar refining business and began importing sugar syrup. In 1999 Customs, under 19 U.S.C. § 1625(c), revoked its ruling letter and re-classified Heartland's sugar syrup imports as subject to TRQ duties.[2] This re-classification was adverse to Heartland, increasing the duty on Heartland's sugar syrup imports by approximately two orders of magnitude. The revocation ruling was to become effective on November 8, 1999, sixty days after it was issued, as provided in 19 U.S.C. § 1625(c).

Before the revocation ruling became effective, however, Heartland filed suit in the Court of International Trade, requesting pre-importation review of the revocation ruling

---

[1] The ruling letter, N.Y. 810328, classified the sugar syrup under subheading 1702.90.40 of the Harmonized Tariff Schedule of the United States ("HTSUS"). The applicable duty under this subheading was 0.35 cents per liter.

[2] This revocation, HQ 961273, re-classified the sugar syrup under HTSUS subheadings 1702.90.10/20, and consequently raised the tariff on Heartland's imports to 35.74 cents per kilogram. <u>See</u> <u>Revocation of Ruling Letter & Treatment Relating to Tariff Classification of Certain Sugar Syrups</u>, 33 Cust. Bull. No. 35/36, at 41 (Sept. 8, 1999).

under 28 U.S.C. § 1581(h) and seeking to enjoin Customs from enforcing the revocation ruling under 28 U.S.C. § 1581(i). The Court of International Trade held under § 1581(h) that Customs's revocation ruling was unlawful, declared that Heartland's sugar syrup imports should be classified as exempt from TRQ duties, but did not grant injunctive relief (which is not authorized by § 1581(h), see 28 U.S.C. § 2643(c)(4)). Heartland By-Prods., Inc. v. United States, 74 F. Supp. 2d 1324, 1329, 1345 (Ct. Int'l Trade 1999) ("Heartland I"). After the Court of International Trade's decision in Heartland I, Heartland continued importing sugar syrup.

Our court subsequently reversed and remanded Heartland I, upholding Customs's revocation ruling re-classifying Heartland's sugar syrup imports as subject to TRQ duties. Heartland II, 264 F.3d at 1137. The Heartland II decision issued on August 30, 2001, and the mandate issued on December 11, 2001. Heartland stopped importing sugar syrup as of August 30, 2001.

An "entry" refers to the "documentation required . . . to be filed with the appropriate Customs officer to secure the release of imported merchandise from Customs custody, or the act of filing that documentation." 19 C.F.R. § 141.0a(a). Liquidation is "the final computation or ascertainment of the duties (not including vessel repair duties) or drawback accruing on an entry." 19 C.F.R. § 159.1. Customs generally liquidates entries within one year of the date of entry. If Customs does not liquidate an entry within one year, it is deemed liquidated at the rate asserted by the importer. 19 U.S.C. § 1504(a)(1). Customs may extend this one-year liquidation period for a period of up to three additional years if "the information needed for the proper . . . classification of the imported . . . merchandise . . . or for ensuring compliance with

applicable law, is not available to the Customs Service." 19 U.S.C. § 1504(b)(1). Customs also may reliquidate a previously liquidated entry within ninety days of its liquidation. 19 U.S.C. § 1501. In most cases, liquidation or reliquidation becomes final unless the importer files a protest within 180 days after the liquidation or reliquidation. 19 U.S.C. § 1514(a), (c).

After the Court of International Trade's October 19, 1999, decision in Heartland I, Customs refrained from liquidating Heartland's entries at the TRQ duty rate until our decision in Heartland II. Most of Customs's liquidations or reliquidations of Heartland's entries at the TRQ duty rate occurred after the issuance of the mandate. However, Customs liquidated or reliquidated some of Heartland's sugar syrup entries at the TRQ duty rate before the Heartland II mandate issued. Heartland filed protests challenging the TRQ liquidations and reliquidations. Customs asserts that Heartland owes more than $65 million in TRQ duties.

After our court's decision in Heartland II, Heartland filed a motion for entry of judgment in the Court of International Trade, seeking a determination that Customs's liquidation or reliquidation of any entries made prior to the issuance of the Heartland II mandate should not be at the TRQ rate. The Court of International Trade declined to exercise jurisdiction under § 1581(h) and dismissed Heartland's complaint, noting that Heartland might be able challenge Customs's treatment of entries made between

<u>Heartland I</u> and <u>Heartland II</u> under the provisions of § 1581(a).[3] <u>Heartland By-Prods.,</u> <u>Inc. v. United States</u>, 223 F. Supp. 2d 1317, 1335–36 (Ct. Int'l Trade 2002) ("<u>Heartland III</u>"). Heartland did not appeal this dismissal.

Heartland and Customs attempted to reach an agreement for the payment of some of the assessed TRQ duties so as to create jurisdiction under § 1581(a), but that attempt failed. Heartland then filed a new complaint in the Court of International Trade under § 1581(h). Heartland challenged Customs's treatment of entries made between the issuance of the Court of International Trade's decision in <u>Heartland I</u> and the issuance of our mandate in <u>Heartland II</u>, seeking "a declaratory judgment that Customs cannot liquidate and/or reliquidate Heartland's entries at TRQ duty rates" and "a preliminary and permanent injunction prohibiting Customs from liquidating and/or reliquidating Heartland's entries at TRQ duty rates." Compl. ¶¶ 51–52, 57–58. The Court of International Trade dismissed Heartland's complaint for lack of jurisdiction. <u>Heartland By-Prods., Inc. v. United States</u>, 341 F. Supp. 2d 1284, 1290 (Ct. Int'l Trade 2004) ("<u>Heartland IV</u>").

Our court subsequently reversed and remanded <u>Heartland IV</u>, concluding that the Court of International Trade had "ancillary jurisdiction to determine the scope and

---

[3]    While § 1581(h) gives the Court of International Trade "exclusive jurisdiction of any civil action commenced to review, prior to the importation of the goods involved, a ruling issued by the Secretary of the Treasury," § 1581(a) gives the Court of International Trade "exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part, under section 515 of the Tariff Act of 1930." To obtain § 1581(a) jurisdiction, an importer must pay the duties as to which a protest has been denied. 28 U.S.C. § 2637(a) ("A civil action contesting the denial of a protest . . . may be commenced in the Court of International Trade only if all liquidated duties, charges, or exactions have been paid at the time the action is commenced . . . .").

effect of its prior decision in [Heartland I]."  Heartland By-Prods., Inc. v. United States,

424 F.3d 1244, 1245 (Fed. Cir. 2004) ("Heartland V").

On remand, Heartland moved for summary judgment and an order enjoining

Customs from collecting duties at the TRQ rate on Heartland's entries.  The Court of

International Trade granted Heartland's summary judgment motion and determined that

Customs was required to liquidate at the non-TRQ duty rate any entries Heartland made

before our court's mandate issued in Heartland II.  Heartland By-Prods., Inc. v. United

States, 521 F. Supp. 2d 1386 (Ct. Int'l Trade 2007) ("Heartland VI").  The court

reasoned that "an importer must be able to rely on a favorable judgment issued

pursuant to § 1581(h)" and that retroactive liquidation or reliquidation of Heartland's pre-

mandate entries at the TRQ duty rate would "undermine the purpose of pre-importation

review" provided by § 1581(h).  Heartland VI, 521 F. Supp. 2d at 1392, 1394.  The Court

of International Trade held that although it is prohibited from issuing injunctive relief in a

§ 1581(h) action by 28 U.S.C. § 2643(c)(4),[4] it has inherent authority to "issue

injunctions to protect against attempts to attack or evade" its judgments.  Heartland VI,

---

[4]  28 U.S.C. § 2643 states:

(c) (1) Except as provided in paragraphs (2), (3), (4), and (5) of this
subsection, the Court of International Trade may, in addition to the
orders specified in subsections (a) and (b) of this section, order any
other form of relief that is appropriate in a civil action, including, but
not limited to, declaratory judgments, orders of remand, injunctions,
and writs of mandamus and prohibition.

. . . .

(4) In any civil action described in section 1581(h) of this title, the Court
of International Trade may only order the appropriate declaratory
relief.

. . . .

521 F. Supp. 2d at 1395 (quoting Heartland V, 424 F.3d at 1251). The court, however, did not actually issue an injunctive order.[5]

The government timely appealed the Court of International Trade's Heartland VI decision. We have jurisdiction under 28 U.S.C. § 1295(a)(5). We requested, and the parties provided, supplemental briefing on the applicability of 19 U.S.C. § 1516(f); on the question whether any liquidations or reliquidations were made during the period between the issuance of our Heartland II decision and the issuance of our mandate; and on the effect of any such liquidations or reliquidations.

We review the grant of summary judgment by the Court of International Trade without deference. Airflow Tech., Inc. v. United States, 524 F.3d 1287, 1290 (Fed. Cir. 2008); Structural Indus., Inc. v. United States, 356 F.3d 1366, 1368 (Fed. Cir. 2004).

DISCUSSION

I

We first address the issue of whether our decision in Heartland II was retroactive with respect to entries made by Heartland before the date the mandate issued in Heartland II (December 11, 2001).

The general rule is that judicial decisions are retroactive. In Harper v. Virginia Department of Taxation, 509 U.S. 86, 97 (1993), the Supreme Court held,

---

[5] Pursuant to Rule 65(d) of the Rules of the Court of International Trade, the court was required to issue a separate injunction order. See Ct. Int'l Trade R. 65(d) ("Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained."); Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 2955 (3d ed. 1995) ("These prerequisites are designed to protect those who are enjoined by informing them of what they are called upon to do or refrain from doing in order to comply with the injunction."). No separate injunction order issued.

When this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule.

See also Reynoldsville Casket Co. v. Hyde, 514 U.S. 749, 752–53 (1995); United States v. Sec. Indus. Bank, 459 U.S. 70, 79 (1982) ("The principle that statutes operate only prospectively, while judicial decisions operate retrospectively, is familiar to every law student."). To the extent that the Court of International Trade held that our decision in Heartland II was not retroactive, the court was mistaken. Under general principles of law, judicial decisions are given retroactive effect.

Heartland does not now dispute this general rule. Instead, Heartland argues that the pre-importation review provided by 28 U.S.C. § 1581(h) creates an exception to the rule. It does not. The language of § 1581(h) does not indicate any congressional intent to create an exception to the retroactivity of judicial decisions.[6]  Neither does the legislative history of § 1581(h) suggest that that provision creates such an exception. The legislative history instead states that § 1581(h) is "a very narrow and limited exception to th[e] rule" that the Court of International Trade "does not possess jurisdiction to review a ruling . . . unless it relates to a subject matter presently within the

---

[6]     28 U.S.C. § 1581(h) states:

The Court of International Trade shall have exclusive jurisdiction of any civil action commenced to review, prior to the importation of the goods involved, a ruling issued by the Secretary of the Treasury, or a refusal to issue or change such a ruling, relating to classification, valuation, rate of duty, marking, restricted merchandise, entry requirements, drawbacks, vessel repairs, or similar matters, but only if the party commencing the civil action demonstrates to the court that he would be irreparably harmed unless given an opportunity to obtain judicial review prior to such importation.

jurisdiction of the United States Customs Court." H.R. Rep. No. 96-1235, at 46–47 (1980), as reprinted in 1980 U.S.C.C.A.N. 3729, 3758.[7]

Heartland also asserts that § 1581(h) would be without effect if an importer could not rely on a decision of the Court of International Trade under § 1581(h) while that decision is appealed. That is not the case. The effect of § 1581(h) is to allow an importer to challenge a Customs ruling all the way through appeal before importing the goods at issue, i.e., before a business decision is made, without engaging in the usual entry and protest procedure. See H.R. Rep. No. 96-1235, 46 (1980), as reprinted in 1980 U.S.C.C.A.N. 3729, 3758 (describing § 1581(h) as designed to avoid injury resulting from being "unable to obtain judicial review of a ruling by the Secretary of the Treasury unless and until the contemplated transaction is completed, the duties are paid and a suit is commenced"). Expedition may be requested by the importer in the Court of International Trade and on appeal; the Court of International Trade set such an expedited briefing schedule for Heartland I. Importing goods while an appeal of a § 1581(h) decision is pending is neither prohibited nor protected by § 1581(h).

---

[7] We note that Customs's own regulations recognize that decisions are retroactive. Under Customs's regulations related to "changes in classification made by decision of either the United States Court of International Trade or the United States Court of Appeals for the Federal Circuit," the "principles of any court decision favorable to the Government shall be applied to all merchandise identical with that passed on by the court which is covered by unliquidated entries . . . ." 19 C.F.R. § 152.16(a).

Heartland also analogizes § 1581(h) to 19 U.S.C. § 1516(f),[8] arguing that the prospective application of judicial decisions provided in § 1516(f) should also be read into § 1581(h).  Section 1516 allows domestic interested parties to petition Customs to correct "the appraised value, the classification, or the rate of duty" on imported merchandise.  Id. at § 1516(a).  Section 1516(f) provides that when a court reviews Customs's decision on such a petition, the court's decision applies only prospectively to entries made after the date Customs publishes notice of the court's decision.  The existence of § 1516(f) shows that Congress knew how to provide for prospectivity, and the absence of prospectivity language in § 1581(h) suggests that Congress did not intend to provide for it in § 1581(h).[9]

For these reasons, we hold that our court's decision in Heartland II was retroactive with respect to entries made before the date the mandate issued in Heartland II (December 11, 2001).  The fact that a decision is retroactive does not mean

---

[8]    19 U.S.C. § 1516(f) states:

If the cause of action is sustained in whole or in part by a decision of the United States Court of International Trade or of the United States Court of Appeals for the Federal Circuit, merchandise of the character covered by the published decision of the Secretary, which is entered for consumption or withdrawn from warehouse for consumption after the date of publication in the Federal Register by the Secretary or the administering authority of a notice of the court decision, shall be subject to appraisement, classification, and assessment of duty in accordance with the final judicial decision in the action, and the liquidation of entries covering the merchandise so entered or withdrawn shall be suspended until final disposition is made of the action, whereupon the entries shall be liquidated, or if necessary, reliquidated in accordance with the final decision. Such notice of the court decision shall be published within ten days from the date of the issuance of the court decision.

[9]    This dispute began as a § 1516(f) case, but Customs decided to proceed under 19 U.S.C. § 1625 rather than § 1516(f) when revoking Heartland's ruling letter.

that final judicial or administrative decisions are to be reopened.[10] There is no contention here that the retroactive nature of our Heartland II decision would require or permit Customs to reopen liquidations made before our Heartland II decision that have become final.

## II

Heartland argues that even if our Heartland II decision were retroactive, Customs could not lawfully liquidate or reliquidate entries at the TRQ rate during the period between the date our decision issued in Heartland II (August 30, 2001) and the date our mandate issued (December 11, 2001). Heartland urges that it is entitled to an order barring Customs from collecting TRQ duties pursuant to such liquidations or reliquidations. The Court of International Trade did not address whether, if our Heartland II decision were retroactive, Customs could liquidate or reliquidate entries at the TRQ rate during the period between the issuance of our Heartland II decision and the issuance of the mandate.

Before the issuance of the Heartland II decision on August 30, 2001, Customs apparently liquidated Heartland's entries at the low non-TRQ rate. At oral argument the government represented that during the period between the issuance of the Heartland II decision and the issuance of the mandate, there had been reliquidations but not liquidations of entries at the TRQ rate. The government later admitted in its

---

[10] See 19 U.S.C. § 1514(a); United States v. Nat'l Semiconductor Corp., 496 F.3d 1354, 1360 (Fed. Cir. 2007) ("[W]hen the time for protesting a liquidation or voluntarily reliquidating has passed, liquidation is said to be final and conclusive as against all claims by both the government and the importer."); United States v. Cherry Hill Textiles, Inc., 112 F.3d 1550, 1560 (Fed. Cir. 1997) ("In cases in which a liquidation has become final, the government cannot seek to recover additional duties simply by making a new liquidation of the original entry.").

supplemental filing that Customs in fact both liquidated and reliquidated entries at the TRQ rate during this period, presumably because Customs believed that the applicable time period for liquidation or reliquidation would run absent prompt action.[11]

In its supplemental filing, the government provided liquidation and reliquidation figures for the period between the date our decision issued in Heartland II (August 30, 2001) and the date the mandate for that decision issued (December 11, 2001). Heartland appears not to dispute the accuracy of the government's figures.[12] According to the government, during the period between the issuance of the Heartland II decision and the issuance of the Heartland II mandate, Customs liquidated 60 entries at the TRQ rate and reliquidated 1,380 prior liquidations at the TRQ rate.

Heartland contends that those liquidations were unlawful and that it is entitled to an injunction barring collection of TRQ duties as to those entries. In fact, the government's failure to abide by the Heartland I declaratory judgment pending appeal

---

[11] At oral argument, the government stated that "[t]o our knowledge there are no liquidations [at the TRQ rate] prior to the mandate . . . there are reliquidations [prior to the mandate]," Oral Argument at 47:10–20, and that "if any liquidations occurred before the mandate, they would have occurred at the lower rate," Oral Argument at 50:45–50, available at http://oralarguments.cafc.uscourts.gov/mp3/2008-1245.mp3. In its subsequent supplemental filing, the government stated that "after August 30 and before December 11, 2001 . . . Customs also liquidated 60 entries at the TRQ duty rate."

[12] Heartland stated in its response to the government's supplemental filing that "Heartland has not been able to verify the correctness of [the government's] figures, but it has no reason to believe they are incorrect."

appears not to have been unlawful.[13]  Rather, the appropriate remedy for the failure to

comply with a declaratory judgment pending appeal seems to be provided in 28 U.S.C.

§ 2202 (a provision applicable to the Court of International Trade), which authorizes

"[f]urther necessary or proper relief based on a declaratory judgment or decree" in the

form of an injunction if an interim declaratory judgment had been ignored.  See Samuels

v. Mackell, 401 U.S. 66, 72 (1971); Powell v. McCormack, 395 U.S. 486, 499 (1969) ("A

declaratory judgment can . . . be used as a predicate to further relief, including an

injunction."); Pub. Serv. Comm'n of Utah v. Wycoff Co., 344 U.S. 237, 245 (1952) ("A

declaratory judgment may be the basis of further relief necessary or proper against the

adverse party.").

But we need not decide the issue raised by Heartland because we conclude that

the issue is moot.  Customs has represented that because its levy of TRQ duties before

the Heartland II mandate issued was contrary to its policy of following the declaratory

judgments of the Court of International Trade during appeals of those judgments,

Customs will not seek to collect the TRQ duties it assessed in its liquidations and

---

¹³      See Kennedy v. Mendoza-Martinez, 372 U.S. 144, 155 (1963) ("The present action, which in form was for declaratory relief and which in its agreed substance did not contemplate injunctive relief . . . affected an Act of Congress in a totally noncoercive fashion. . . . Pending review in the Court of Appeals and in this Court, the Government has been free to continue to apply the statute."); Steffel v. Thompson, 415 U.S. 452, 471 (1974) ("[E]ven though a declaratory judgment has 'the force and effect of a final judgment,' 28 U.S.C. § 2201, it is a much milder form of relief than an injunction. Though it may be persuasive, it is not ultimately coercive; noncompliance with it may be inappropriate, but is not contempt." (quoting Perez v. Ledesma, 401 U.S. 82, 125-26 (1971) (Brennan, J., concurring in part and dissenting in part))); Steffel, 415 U.S. at 482 ("A declaratory judgment is simply a statement of rights, not a binding order supplemented by continuing sanctions." (Rehnquist, J., concurring)); see also Armstrong v. Executive Office of the President, 1 F.3d 1274, 1289 (D.C. Cir. 1993) (reversing a district court's contempt finding because it was based on a declaratory judgment rather than a court order).

reliquidations before the <u>Heartland II</u> mandate issued on December 11, 2001 (if there was no timely reliquidation action after the issuance of the mandate).[14]

To be sure, "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice" unless "subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." <u>Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.</u>, 528 U.S. 167, 189 (2000) (internal quotation marks omitted). Here we are satisfied that this latter condition is met, because it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." Here there will be no future liquidation of any of Heartland's entries since Heartland has ceased importation, and we see no reason to doubt the government's representation that it will not seek to recover unpaid duties with respect to past entries liquidated or reliquidated at the TRQ rate between our decision in <u>Heartland II</u> and the issuance of the mandate. There is also no dispute as to the identity of the entries or the amount of the duties. Under these circumstances, we conclude that this issue is moot.

Our decision does not, of course, affect the government's right to collect TRQ duties levied as part of liquidations and reliquidations made after the <u>Heartland II</u> mandate issued, including liquidations of entries whose liquidation periods were extended before December 11, 2001. We have specifically held that such liquidations

---

[14]    <u>See</u> Supplemental Brief of Customs 5 (the "general policy" of Customs is to follow declaratory judgments); Oral Arg. at 7:11-7:21 (pre-mandate liquidations and reliquidations "in Heartland's favor" were proper); <u>id.</u> at 50:45-52:00 (pre-mandate liquidations and reliquidations at the TRQ rate were concededly contrary to the Court of International Trade's declaratory judgment in <u>Heartland I</u>).

and reliquidations were permissible because our decision in <u>Heartland II</u> was retroactive.

<u>REVERSED</u>

COSTS

No costs.